STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
                                                      SUPERIOR COURT DIVISION
IREDELL COUNTY                                        21-CVS-1665

DAVID HOWARD CALL,           )

               Plaintiff,                      )

v.                                                )
                                               )            **COMPLAINT**

TOWN OF MOORESVILLE, N.C.; DAMON )
WILLIAMS, individually and in his Official )
Capacity as Chief of Police of the Town of )
Mooresville, N.C.; DAVID TREME, in his )
individual and Official Capacity as Interim )
Manager of the Town of Mooresville, N.C.; )
and RONALD CAMPURCIANI, individually )
and in his Official Capacity as Chief of Police of )
the Town of Mooresville, N.C.; )
                                               )
               Defendants.                 )

        **COMES NOW** the Plaintiff, David Howard Call, and hereby submits this Complaint against Defendants, Town of Mooresville, North Carolina; Damon Williams, individually and in his official capacity as Chief of Police of the Town of Mooresville, North Carolina; David Treme, individually and in his official capacity as the Interim Manager of the Town of Mooresville, North Carolina; and Ronald Campurciani, individually and in his official capacity as Chief of Police of the Town of Mooresville, North Carolina; as follows:

        1.        This action is brought against Defendants Town of Mooresville, North Carolina, Damon Williams, former Chief of Police of the Town of Mooresville, David Treme, former Manager of the Town of Mooresville Mooresville, and Ronald Campurciani, Chief of Police of

the Town of Mooresville, by Plaintiff David Howard Call, a former employee, for the Town's violation of his rights as follows:

a) Termination of his employment in violation of public policy as recognized in *Corum v. University of North Carolina*, 413 S.E.2d 761 (1992);

b) Violation of Article I, Section 19 of the Constitution the State of North Carolina by unlawfully depriving Plaintiff of the fruits of his labor; and

c) Violation of Plaintiff's rights arising under the First Amendment to the United States Constitution, via 42 USC § 1983.

## PARTIES

2. Plaintiff is a citizen and resident of Ashe County, North Carolina.

3. Defendant Town of Mooresville, North Carolina is Municipal corporation organized and existing pursuant to N.C.G.S. § 160A-11 et seq, with the capacity to sue and be sued in its own name.

4. Upon information and belief Defendant Damon Williams is a citizen and resident of Cumberland County, North Carolina.

5. Upon information and belief Defendant David Treme is a citizen and resident of Rowan County, North Carolina.

6. Upon information and belief, Defendant Ronald Campurciani is a citizen and resident of Iredell County, North Carolina.

7. Upon information and belief, Defendant Town of Mooresville has affirmatively waived the defense of sovereign immunity through the purchase of liability insurance, by virtue of participation in a local government risk pool, or by local ordinance.

EXHIBIT 1

8. Defendant Damon Williams is sued in his individual and official capacity.

9. Defendant David Treme is sued in his individual and official capacity.

10. Defendant Ronald Campurciani is sued in his individual and official capacity.

## JURISDICTION AND VENUE

11. This Court has subject jurisdiction over this matter as it is a claim in excess of $25,000 and Venue is proper in Iredell County as the Town of Mooresville operates therein.

12. This suit is filed within the requisite statute of limitations.

## STATEMENT OF FACTS

13. Plaintiff repeats, realleges and incorporates by reference each allegation in paragraphs 1 through 12 as if fully set forth herein.

14. Plaintiff served twenty-five (25) years with the North Carolina State Bureau of Investigation, retiring in 2009 as the Special Agent in Charge of the Western District Office in Hickory, North Carolina. Plaintiff has a total of over thirty-seven (37) years of law enforcement experience.

15. In 2012, then Mooresville Police Chief Carl Robbins asked Plaintiff to begin employment with the Mooresville Police Department due to Plaintiff's experience and knowledge in investigations.

16. Plaintiff began employment as a Detective with the Town of Mooresville, North Carolina on July 1, 2012. He rose through the ranks, reaching the rank of Captain, becoming the Captain in charge of the Criminal Investigations Division.

17. Chief Robbins announced his retirement in August of 2015.

18. Plaintiff was asked to apply for the open position of Police Chief. Plaintiff was a finalist for the position, along with Defendant Williams.

19. On February 22, 2016, Defendant Damon Williams was hired as the new Chief of Police for the Town and Williams subsequently began performing his duties on April 4, 2016. Williams only had a total of eleven (11) years law enforcement experience with small agencies and was unqualified for the position.

20. In December of 2016, David Treme was named Interim Town Manager.

21. Williams was aware that Plaintiff Call was a finalist for the position and that Call was a highly popular supervisor within the agency.

22. Defendant Williams felt threatened by Plaintiff Call and ostracized him from command level decisions.

23. Plaintiff applied for the position of Deputy Chief. However, Defendant Williams refused to speak with Plaintiff about the process or allow him to participate. Plaintiff later withdrew from the promotional process as it became evident that Williams did not want Plaintiff as Deputy Chief, and would not let him participate in the process.

24. At all times, Plaintiff followed all departmental policies and regulations. However, that did not stop Defendant Williams from targeting Plaintiff Call.

25. On October 1, 2018, Plaintiff, along with two (2) narcotics detectives that he supervised, were placed on administrative leave, purportedly due to the misappropriation of "special funds" utilized in the Criminal Investigations Division (CID). The funds in question,

approximately two hundred and fifty dollars ($250.00), were utilized to reimburse a defendant whose car was mistakenly impounded after being seized pursuant to a Court order.

26. Plaintiff was suspended despite the fact that he followed departmental regulations for disbursement of the funds, including submitting a receipt for the funds to the Deputy Chief, and ultimately the Chief.

27. Plaintiff was stripped of his credentials, gun, and badge in full view of his subordinates, during the middle of the day. In addition, his Town issued vehicle was taken away and he was forced to find alternative transportation home.

28. Upon information and belief, Defendant Chief Williams directed that these actions be taken in order to humiliate and degrade Plaintiff.

29. The investigation into the use of these funds was a complete sham. When Plaintiff authorized dispersal of the funds, he had completed all departmental forms regarding same and the disbursement had been approved by the chain of command, including Defendant Williams.

30. Although Mooresville had its own Internal Affairs Division and the inquiry into this incident was simple, the Town elected to hire an outside agency, U.S. ISS Agency, LLC (hereinafter "ISS"), to investigate.

31. ISS was not provided complete information by the Town, such as the fact the disbursement had been approved by Defendant Williams. In addition, Defendant Williams did not provide ISS with prior disbursements which illustrated that the disbursal was appropriate.

32. ISS conducted a six-hour interview of Plaintiff over this minor matter on November 9, 2018.

33. Plaintiff returned to work on December 12, 2018 or over two (2) months later.

34. Plaintiff received discipline from Defendant Williams for mishandling of evidence, despite the fact the vehicle was not evidence. Rather, the vehicle was seized pursuant to a Court order.

35. Upon information and belief, Defendant Williams knew he had no basis in policy or fact to discipline Plaintiff. The ISS investigation resulted in a recommendation to review and update policies but did not recommend discipline against Call as he had complied with all departmental policies.

36. Plaintiff appealed his discipline to Interim Town Manager Treme, who rubber-stamped the decision of Defendant Williams, even though Treme also realized Plaintiff had not violated policy.

37. Williams and Treme were final policy makers for Defendant Town. They both acted with actual malice towards Plaintiff.

38. Because of the actions by Defendant Williams, Plaintiff filed a hostile work environment complaint in November of 2018. The hostile work environment investigation was once again turned over by Defendant Williams to ISS.

39. On January 17, 2019, Defendant Treme came unannounced to Plaintiff's office for the sole purpose of intimidating Plaintiff into dropping his hostile work environment claim.

EXHIBIT 1

40. Knowing that Plaintiff was deeply religious, Defendant Treme walked around Plaintiff's desk and placed his hands on Plaintiff, as one would do in a church setting, while saying the matter should be turned over to God. While "laying hands on Plaintiff," Defendant Treme urged him to drop the hostile work environment claim.

41. Plaintiff was deeply offended by Defendant Treme's actions and realized he had no chance of getting a fair investigation.

42. Plaintiff had nowhere to turn, because Defendant Williams was his department head and Defendant Treme was the Town Manager with authority over the Police Department.

43. In addition to the actions taken against him, Plaintiff was also aware of several issues within the department which were matters of public concern. These issues included, but were not limited to:

    a) Discrimination against a gay patrol officer by the captain and sergeant of the patrol squad;

    b) The department's refusal to provide adequate equipment to a Canine Officer, such as a properly functioning emergency button utilized to release the dog, and refusal to provide a spotlight. This officer was later murdered on duty while working with sub-standard equipment;

    c) Refusal to fund narcotic investigations, so that officers could not pursue serious drug offenses;

    d) The hiring of underqualified officers who were not fit for law enforcement; and

EXHIBIT 1

e) Refusal to provide police radios for detectives and narcotics investigators' vehicles.

44. As a result of these serious issues, affecting the operations of the agency, Plaintiff contacted members of the Town Board of Commissioners and the Mayor to make them aware of these serious issues of public concern.

45. The investigation into the hostile work environment claim lodged by Plaintiff lasted over seven (7) months. Plaintiff was subjected to three (3) separate interviews, lasting several hours, during which he was berated and belittled.

46. In addition, Plaintiff was cut off from investigating matters directly under his command to include, but not limited to:

a) An allegation that a Town Commissioner stabbed another individual; and

b) The investigation into the murder of a Mooresville K-9 Officer, despite the fact that Plaintiff had responded to the scene of the incident on the evening it occurred.

47. Defendant Williams was suspended from his employment with the Town on June 3, 2019, due to his incompetence. He resigned on November 14, 2019. Despite that fact, no one with the Town intervened in the ISS prosecution of Plaintiff.

48. Defendant Ronald Campurciani was hired as Interim Chief on or about June 17, 2019, accepting the role permanently on December 18, 2019.

49. At the conclusion of the ISS investigation, Plaintiff was faulted for:

a) Testifying truthfully under oath, pursuant to a subpoena, in a death investigation; and

b) Contacting the Board of Commissioners about matters of public concern.

50. Plaintiff was terminated from his employment with the Town on November 15, 2019, as a result of the ISS investigation despite the fact that he testified truthfully and only raised matters of public concern.

51. Defendant Campurciani terminated Plaintiff despite being aware that it was unlawful.

52. Defendant Williams acted with actual malice toward Plaintiff and sought to ruin him.

53. Defendant Treme acted with malice when he attempted to thwart Plaintiff's hostile work environment claim.

54. Defendant Campurciani has vast experience in law enforcement, thus he knew he could not lawfully terminate Plaintiff for exercising his First Amendment rights and testifying truthfully under oath. Despite this, he did so anyway. Defendant Campurciani acted with actual malice toward Plaintiff.

55. As a result of Defendants' unlawful conduct, Plaintiff has been diagnosed with Post Traumatic Stress Disorder. He suffers from extreme anxiety, nightmares, and depression.

## COUNT I: TERMINATION IN VIOLATION OF PUBLIC POLICY

56. Plaintiff repeats, realleges and incorporates by reference each allegation in paragraphs 1 through 55 as if fully set forth herein.

57. Plaintiff's termination was based upon two purported violations

a) Intervention in a criminal case, in which Plaintiff was subpoenaed to the grand jury and testified truthfully under oath; and

b) Exercise of his First Amendment rights afforded under the United States Constitution for bringing matters of public concern as described above herein to the attention of the Town Board of Commissioners.

58. The actions by Defendants violated the public policy of North Carolina as recognized in *Corum*.

59. On account of Defendants' actions, Plaintiff is entitled to compensatory damages in excess of $25,000.00 dollars.

60. Plaintiff is also entitled to punitive damages against Defendants Williams, Treme, and Campurciani, as they acted with malice toward him.

## COUNT II: VIOLATION OF DUE PROCESS UNDER THE NORTH CAROLINA STATE CONSTITUTION

61. Plaintiff repeats, realleges and incorporates by reference each allegation in paragraphs 1 through 60 as if fully set forth herein.

62. The actions of Defendants violated Plaintiff's due process rights, under the North Carolina State Constitution, specifically by depriving Plaintiff of the fruits of his labor.

63. On account of Defendants' actions, Plaintiff is entitled to compensatory damages in excess of $25,000.00 dollars. Plaintiff is also entitled to punitive damages against Defendants Williams, Treme, and Campurciani, as they acted with malice toward him.

## COUNT III: VIOLATION OF THE FIRST AMENDMENT

64. Plaintiff repeats, realleges and incorporates by reference each allegation in paragraphs 1 through 63 as if fully set forth herein.

65. Due to the actions of Defendant Williams and Defendant Treme Plaintiff had no alternative but to bring matters of public concern, including discrimination against a gay police officer, refusal to provide appropriate equipment to a K-9 handler, as well as mistreatment of Plaintiff, to the attention of the governing board.

66. Defendant Town and Defendant Campurciani terminated Plaintiff's employment, in part, for bringing these matters to the attention of the board, in violation of Plaintiff's rights arising under the first amendment to the United States Constitution, via 42 USC § 1983.

67. On account of Defendants' actions, Plaintiff is entitled to compensatory damages in excess of $25,000.00 dollars. Plaintiff is also entitled to punitive damages against Defendants Williams, Treme, and Campurciani, as they acted with malice toward him.

**WHEREFORE**, the Plaintiff, David Howard Call, prays the Court:

1. For judgment in favor of Plaintiff and against Defendant in an amount in excess of twenty-five thousand dollars ($25,000.00) in damages and interest; and

2. Recovery of costs, including such attorney's fees as may be allowable under existing law or the extension of existing law; and

3. The taxing of all costs against Defendants; and

4. The award of interest against Defendants as may be allowed by law;

5. For a trial by jury as to all issues so triable; and

6. For such other and further relief as the Court deems just and proper.

EXHIBIT 1

Respectfully submitted, this the 10 day of June, 2021.

_____
William L. Hill (NCSB #21095)
*Attorney for Plaintiff David Call*

**FRAZIER, HILL & FURY, R.L.L.P.**
2307 W. Cone Boulevard, Suite 260
Post Office Drawer 1559
Greensboro, North Carolina 27401
Telephone:    (336) 378-9411
Facsimile:    (336) 274-7358
whill@frazierlawnc.com